UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| ESTATE OF REX VANCE WILSON by administrator PETRA WILSON, et al.,<br><br>Plaintiffs<br><br>v.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,<br><br>Defendants | Case No.: 2:18-cv-01702-APG-VCF<br><br>**Order Granting in Part Defendants' Motion for Summary Judgment and Ordering New Dispositive Motion Deadline**<br><br>[ECF No. 22] |

Rex Vance Wilson was fatally shot by police officers following a 30-minute, high-speed car chase. His estate, widow, and children filed this lawsuit against Las Vegas Metropolitan Police Department (LVMPD), Sheriff Joseph Lombardo, and LVMPD officers John Squeo, Travis Swartz, Christopher Gowens, and Eric Lindberg. They assert multiple claims under both federal and state law. The defendants move for summary judgment on all claims. I grant the defendants' motion on all claims except the negligence and negligent infliction of emotional distress claims against defendant Squeo. But I will allow the parties to file additional motions on those claims.

**I. BACKGROUND**

On October 12, 2016, Rex Wilson was driving a stolen car and he fled when an officer attempted to pull him over. ECF No. 22-5 at 9. In addition to driving a stolen car, Wilson was identified as the suspect in a string of armed robberies. ECF Nos. 22-6 at 25; 22-8 at 25; 22-9 at 18. Several LVMPD officers in multiple cars pursued him. ECF No. 22-5 at 9-15. As relevant here, Officers Gowens and Squeo followed Wilson in one police car, while Officers Swartz and

Lindberg followed him in two separate police cars. *Id.* at 14-15.  The pursuit lasted for approximately 30 minutes, reaching speeds over 100 miles per hour and eventually leading onto Interstate 215. *Id.* at 61; *see also* ECF Nos. 22-10 at 20; 22-12, all officers' BWCs.[1]

An officer attempted a precision intervention technique (PIT) to end Wilson's flight, but was unsuccessful. ECF No. 22-5 at 9.  Once the pursuit reached the interstate, LVMPD officers again attempted to end the chase by laying down stop sticks. ECF No. 22-10 at 15.  Wilson eventually passed over a stop sticks, which damaged one of his tires. *Id*.  Wilson came to a stop, prompting officers to get out of their cars and draw their firearms. ECF No. 22-12, Squeo BWC at 21:50.  But Wilson then began driving away. *Id.* at 22:15.

Because of the damage to Wilson's tire, he was driving on one of the rims and at a much slower speed than before. *Id.* at 22:20-35; ECF No. 22-9 at 20.  Officers estimated he was travelling between 20 to 40 miles per hour at this point. ECF Nos. 22-6 at 28, 30; 22-9 at 21.  There were no pedestrians or civilian traffic nearby. *Id.*  Someone suggested over the police radio that officers should stop Wilson before he exited the freeway. ECF No. 22-12, Squeo BWC at 22:33.

Noting that Wilson's car was traveling under 40 miles per hour, Gowens urged Squeo several times to PIT Wilson's car. ECF No. 22-12, Squeo BWC at 22:30-50.  Squeo attempted a PIT and bumped Wilson's car, causing it to spin around into the middle of the freeway. *Id.* at 22:42-50.  Officers then conducted a second PIT that knocked Wilson into the median. ECF Nos. 22-6 at 30-31; 22-8 at 26.

---

[1] BWC refers to an officer's body worn camera.  Citations to the videos identify which officer's BWC is being cited and approximate times on the video.

Once in the median, Wilson's car came to a stop and the front of Squeo and Gowens' car bumped into Wilson's driver side door, blocking it from opening. *Id.*; ECF No. 22-12, Squeo BWC at 22:50-23:00. At the same time, the front of Lindberg's car bumped the front of Wilson's car, blocking it from moving forward, and Swartz pulled up next to Wilson's passenger side door. *Id.* at 23:00; ECF Nos. 22-8 at 26; 22-12, Lindberg BWC at 23:15. The officers exited their cars with their weapons drawn, and within seconds, all four officers fired multiple shots into the driver's side of Wilson's car. ECF No. 22-12 Squeo BWC at 23:00-10; Swartz BWC at 22:43; Lindberg BWC at 23:20. Squeo testified that he began shooting because Wilson pointed a firearm directly at him. ECF No. 22-6 at 33-34. Gowens testified he saw Wilson turn and point a firearm. ECF No. 22-10 at 18-19. Swartz testified that he fired because he saw Wilson point a semiautomatic handgun in Squeo's direction. ECF No. 22-8 at 28. Lindberg testified that he saw Wilson with a firearm "punching out" of the driver's side window. ECF No. 22-9 at 22.

"Shots fired" was called over the police radio at 11:47 p.m. ECF No. 22-5 at 64. Once the firing ceased, officers attempted to communicate with Wilson, demanding he show his hands and surrender. *Id*. at 51, 54, 57. Unsure of whether he was still alive, the officers waited for a ballistic shield to arrive before approaching the car. *Id.* at 48-49, 59. A call for medical assistance was made at 12:02 a.m. *Id.* at 64.

No firearms were recovered from Wilson's car. Instead, once officers approached his vehicle with a ballistic shield, they found a spray nozzle with black tape in his hand. *Id.* at 7, 32, 49. Wilson was no longer alive at this point. *Id.* at 48. Officers found the word "Sorry" written in blood on the screen of his car's navigation system. *Id.* at 32.

Wilson's estate, widow, and children filed this lawsuit asserting claims under 42 U.S.C. § 1983 for (1) excessive force against Gowens, Squeo, Lindberg, and Swartz; (2) deprivation of

3

familial relationship with Wilson without due process of law against all defendants; and (3) municipal liability based on unconstitutional customs and practices against LVMPD and Sheriff Lombardo; (4) assault and battery under Nevada law against Gowens, Squeo, Lindberg, and Swartz; (5) negligent supervision and training against LVMPD and Lombardo; and (6) negligence, wrongful death, and negligent infliction of emotional distress against all defendants. The defendants move for summary judgment on all claims.

## II. ANALYSIS

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the nonmoving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

### A. Section 1983 Claims

To establish liability under § 1983, the plaintiffs must show (1) the deprivation of a right secured by the Constitution and laws of the United States and (2) that the alleged deprivation was

committed by a person acting under color of state law. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). The defendants do not dispute that they acted under color of law. The only issues that remain are whether they violated a constitutional right and whether they are entitled to qualified immunity.

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Id.* (quotation omitted). Even if the defendant makes a mistake of law or acts based on a mistake of fact, he may be entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

I determine whether the defendant officers are entitled to qualified immunity by asking (1) whether the facts viewed in the light most favorable to the plaintiffs establish that the officers violated a constitutional right and (2) "if so, whether that right was clearly established at the time of the event." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1075 (9th Cir. 2011). I may address these two prongs in any order and, depending on the conclusion I reach, I need not address both prongs. *Pearson*, 555 U.S. at 236-37.

The "clearly established" prong determines whether the officer had a reasonable warning that the conduct at issue violated that constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam). I must look to case law on the allegedly violated right. *Boyd v. Benton Cnty.*, 374 F.3d 773, 781 (9th Cir. 2004). A case directly on point is not necessary, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Mattos v.*

*Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (en banc) (quotation omitted).  I must not define clearly established law at "a high level of generality." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (quotation omitted).  "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (quotation omitted).

### 1.  Excessive Force

Excessive force in the course of an arrest, including deadly force, is analyzed under "the Fourth Amendment's 'objective reasonableness' standard." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (quoting *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  To determine whether the officers' actions were objectively reasonable in light of the circumstances confronting them, I "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 383 (quotation omitted).  This generally entails a three-step analysis. *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003).  First, I assess "the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Id.*  Second, I assess "the importance of the government interests at stake by evaluating: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.*  Third, I weigh the gravity of the intrusion against the government's interest to determine whether the amount of force was constitutionally reasonable. *Id.*

Deadly force means "force that creates a substantial risk of causing death or serious bodily injury." *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005) (en banc).  Deadly force is reasonable "only if the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Gonzalez v. City of*

*Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (en banc) (quotation omitted).  Likewise, an officer "may use deadly force to apprehend a fleeing suspect only if the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others." *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).  "A suspect may pose such a threat if there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, or if the suspect threatens the officer or others with a weapon capable of inflicting such harm." *Id.* (quotation omitted).

I consider all relevant objective "facts and circumstances confronting [the officers], without regard to their underlying intent or motivation" and "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Monzon v. City of Murrieta*, 978 F.3d 1150, 1157 (9th Cir. Oct. 27, 2020) (quotation omitted).  And I must consider the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1058 (9th Cir. 2003) (quotation omitted).

*a. Use of Deadly Force by Firearm*

Gowens, Squeo, Swartz, and Lindberg move for summary judgment on the plaintiffs' claim that they violated Wilson's Fourth Amendment right by shooting and killing him.  The officers contend that the shooting was a reasonable use of force under the circumstances and that they are entitled to qualified immunity.  The plaintiffs do not respond to the defendants' argument that the shooting was justified.

By shooting Wilson multiple times and killing him, the officers obviously used deadly force, the "greatest degree of force possible." *Tan Lam v. City of Los Banos*, 976 F.3d 986, 998 (9th Cir. 2020). But the shooting was reasonable as a matter of law. The plaintiffs do not dispute the officers' testimony or the video evidence that Wilson pointed an object that appeared to be a handgun in Officer Squeo's direction. They also do not dispute that officers found a spray nozzle fashioned to look like a handgun in Wilson's hand. The officers thus had probable cause to believe that Wilson posed a significant threat of death or serious physical injury to Squeo and the other officers. Although the officers were mistaken about what was in Wilson's hand, there is no evidence that their mistake was anything but reasonable under the circumstances. Because no genuine dispute remains that Wilson pointed what appeared to be a firearm at defendant Squeo, and in light of the totality of the circumstances facing the officers, the defendants' use of deadly force was reasonable.

Additionally, the plaintiffs have not identified any law that would have adequately put the officers on notice that using deadly force when Wilson pointed what appeared to be a firearm at an officer following a high speed chase would violate Wilson's Fourth Amendment rights. The defendants are entitled to qualified immunity.

Because the defendants did not violate Wilson's Fourth Amendment rights and are entitled to qualified immunity, I grant summary judgment in favor of Gowens, Squeo, Swartz, and Lindberg on the plaintiffs' Fourth Amendment excessive force claim based on the shooting. I also grant the defendants summary judgment on the plaintiffs' Fourteenth Amendment due process claim for loss of familial association as to this use of force because that claim is governed by a higher standard. *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 n.4 (9th Cir. 1998), *as amended* (Nov. 24, 1998).

*b. Use of Force by Vehicle*

In response to the defendants' summary judgment motion, the plaintiffs argue that the defendants used excessive force when Squeo "rammed" Wilson's car. The plaintiffs contend that Gowens urged Squeo to "ram" Wilson, that Squeo did so, that "ramming" is deadly force under LVMPD policy, and that deadly force was unreasonable when Wilson was driving slowly on the car's rim in an area where there were no pedestrians or civilian traffic.[2] The defendants respond that regardless of what Gowens said, Squeo did not "ram" Wilson or otherwise use deadly force when he bumped Wilson's car. They also argue that no clearly established law put Squeo on notice that such conduct was prohibited under the circumstances.

Even viewing the evidence in the light most favorable to the plaintiffs, no reasonable jury viewing the bodycam videos could conclude that Squeo's contact with Wilson's car constituted deadly force. Both impacts were relatively minor bumps at low speeds. The plaintiffs have offered no evidence that either impact created a substantial risk of causing death or serious bodily injury. The plaintiffs rely on LVMPD's policy that characterizes "ramming" as deadly force. ECF No. 22-17 at 30. But a police department's policies or training materials are not dispositive on the constitutional level of reasonable force, though I may take them into consideration. *Drummond*, 343 F.3d at 1059. Moreover, under LVMPD's policy, a PIT under

---

[2] Gowens, Squeo, Swartz, and Lindberg contend that the plaintiffs did not plead this theory in the complaint. Federal Rule of Civil Procedure 8(a)(2) requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint's factual allegations refer to Gowens urging Squeo to ram Wilson and state that Squeo repeatedly rammed Wilson's car. ECF No. 1 at 7, 9-10. For the Fourth Amendment claim, the complaint incorporates the factual allegations but then states that these officers "used unreasonable and excessive force when they shot and killed" Wilson. ECF No. 1 at 11. The plaintiffs did not clarify the basis of their excessive force claim in their responses to interrogatories. ECF No. 28 at 18-29. But the ramming issue was brought up in the officers' depositions. *See, e.g.*, ECF No. 22-6 at 22-23. Because the parties addressed this issue in their response and reply briefs, I will analyze the claim.

forty miles per hour is not a use of deadly force, nor are several other vehicle contacts used to end police pursuits. ECF No. 22-17 at 29-30.  Given the low speed at the time of the contacts and the minor nature of the bumps as shown on the bodycam video, no reasonable jury could conclude that the amount of force used was deadly.

Nor could a reasonable jury find that the use of force was unreasonable under the totality of the circumstances from the perspective of the officers.  There were significant governmental interests at stake.  The police had probable cause to believe that Wilson had committed a series of armed robberies and was driving a car that he stole at gunpoint.  The video evidence supports the officers' conclusion. ECF Nos. 22-4 (videos of armed robberies); 22-7 (video of carjacking).  The plaintiffs do not contest that Wilson committed the robberies or the carjacking.  He led officers on a 30-minute, high-speed chase during which he twice feigned stopping only to flee again.  Given the violent nature of Wilson's prior offenses, the officers had an interest in apprehending him before he might be able to get off the interstate and into a residential area.  And given that Wilson had pretended to stop only moments before, his slow speed did not ensure he was going to surrender without further flight.  Weighing those interests against the relatively minor intrusion of the low-speed impacts, Squeo's use of his police car to end Wilson's flight was not an unreasonable use of force.

Even if a reasonable jury could find the use of force was unreasonable, the officers are entitled to qualified immunity.  The plaintiffs have not identified clearly established law that would have put the officers on notice that making low-speed contacts to end a 30-minute police pursuit under these circumstances would amount to unreasonable deadly force.  The plaintiffs identify cases that delineate certain circumstances where it becomes impermissible to use deadly force, but none of them is sufficiently similar to the circumstances in this case to have put the

officers on notice that their conduct was unlawful. *See Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (holding that deadly force is acceptable when an officer is on foot and in the path of a suspect's accelerating vehicle); *Gonzalez*, 747 F.3d at 796-97 (holding that a reasonable jury could find that shooting the driver in the head was unreasonable if the jury concluded the vehicle was not moving at a high rate of speed and thus did not pose a threat of death or serious bodily injury to the officers or others). The cited cases involve the question whether it is reasonable for an officer to shoot a fleeing driver. But here, no reasonable jury could conclude that Squeo's use of force rose to that level. Moreover, the officers may have been reasonably mistaken about the level of force being used, based on their conversation about how slow Wilson was traveling before Squeo bumped Wilson's car. And the plaintiffs have not pointed to clearly established law that low-speed impacts during a police chase of a suspected armed robber are unreasonable.

Accordingly, the officers are entitled to summary judgment on the plaintiffs' claim that they used excessive vehicular force against Wilson in violation of his Fourth Amendment right. And because the Fourteenth Amendment demands a higher standard than unreasonableness, the plaintiffs' Fourteenth Amendment due process claim for loss of familial association as to this claim fails as well. *Moreland*, 159 F.3d at 371 n.4.

### 2. Denial of Medical Care

In response to the defendants' motion, the plaintiffs argue that their Fourteenth Amendment familial relationship claim survives summary judgment because Gowens, Swartz, Lindberg, and Squeo failed to provide Wilson with prompt medical care. The defendants contend that they are entitled to summary judgment because Gowens, Squeo, Swartz, and

Lindberg were not in control of the post-shooting scene, and because the plaintiffs did not provide evidence that Wilson would have survived had quicker medical care been provided.[3]

"[S]uspects have a Fourth Amendment right to 'objectively reasonable post-arrest [medical] care' until the end of the seizure." *Est. of Cornejo ex rel. Solis v. City of Los Angeles*, 618 Fed. App'x 917, 920 (9th Cir. 2015) (quoting *Tatum v. City & Cnty. of San Francisco*, 441 F.3d 1090, 1099 (9th Cir. 2006)). "This means that officers must 'seek the necessary medical attention for a detainee when he or she has been injured while being apprehended by either promptly summoning the necessary medical help or by taking the injured detainee to a hospital.'" *Id.* (quoting *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1415 (9th Cir. 1986)). Thus, a police officer who promptly summons the necessary medical assistance has acted reasonably for purposes of the Fourth Amendment. *Tatum*, 441 F.3d at 1099.

Because the plaintiffs assert this as part of their Fourteenth Amendment familial relationships claim, the plaintiffs also must show that the officers' conduct shocks the conscience. *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). I need not decide whether the test for the officers' culpability under the "shocks the conscience" standard is deliberate indifference or purpose to harm unrelated to any legitimate law enforcement objective because under either test, the plaintiffs' claim fails. *See id.* at 1137-40. But I note that generally officers involved in a high-speed car chase are not liable absent a purpose to harm. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 854 (1998).

---

[3] The defendants contend that the plaintiffs did not plead this claim in their complaint. The complaint contains facts about the time lapse between the shots fired and the call for medical aid. ECF No. 1 at 10. But it is not clear from any other allegations or claims that the plaintiffs intended to assert a Fourth Amendment denial of medical care claim on Wilson's behalf or as an aspect of the Fourteenth Amendment loss of familial relationships claim. Because the parties addressed this claim in their response and reply briefs, I will address it.

The plaintiffs state in the complaint and in their response that Sergeant Christopher Halbert oversaw the post-shooting scene and that Halbert instructed Gowens, Squeo, Swartz, and Lindberg to stand back and wait for a ballistic shield to arrive. ECF Nos. 1 at 10; 27 at 5.  But Sergeant Halbert is not named as a party in this suit and the plaintiffs do not explain how Gowens, Squeo, Swartz, and Lindberg may be held liable for Halbert's actions or omissions. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must [establish] that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Further, the officers taking the time to ensure that Wilson was no longer a threat before approaching him does not shock the conscience under the Fourteenth Amendment. *See Estate of Martinez v. City of Federal Way*, 105 Fed. App'x 897, 899 (9th Cir. 2004) (holding that officers did not act with deliberate indifference as to the necessity to promptly summon medical care by first ensuring that the scene was safe).  Moreover, the plaintiffs do not identify caselaw that would have put the officers on notice that they needed to summon medical attention before the scene was deemed safe. *See id.*

Finally, there is no evidence that it would have made a difference if the officers had summoned medical aid sooner.  There is evidence that Wilson did not die instantly because officers saw him moving for a while and he had time to write the word "Sorry" in blood on the navigation system.  But by the time the officers approached Wilson, he was already deceased.  Thus, even if the officers had immediately called for medical care and medical personnel had immediately arrived, Wilson would have been deceased before any medical personnel could have safely approached him to render aid. *See id.* (stating that officers were not liable for failure to perform CPR because there was "no evidence that CPR or first aid would have been

beneficial"). Accordingly, the defendants are entitled to summary judgment on the plaintiffs' Fourth and Fourteenth Amendment claims for denial of medical care.

### 3. *Monell* Claim

The plaintiffs also bring a claim under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), against LVMPD and Lombardo. This claim is based on allegations that Lombardo and LVMPD encourage and ratify excessive force shootings; inadequately supervise, train, and discipline LVMPD officers; and maintain inadequate procedures regarding intentional officer misconduct and excessive use of deadly force. The defendants argue that this claim fails because no constitutional rights were violated and because the plaintiffs offer no evidence to support their claim. The plaintiffs did not respond.

Because there is no constitutional violation, LVMPD and Sheriff Lombardo cannot be liable under *Monell*. *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) (stating that *Monell* claims "require a plaintiff to show an underlying constitutional violation"). And because the plaintiffs did not respond to the defendants' arguments regarding this claim, they have not pointed to evidence supporting *Monell* liability under any theory. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on other grounds*, *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001). For example, the plaintiffs present no evidence outside of this incident to support a claim that an official policy or custom was the moving force behind the officers' acts or omissions. *See id.* ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."). I therefore grant summary judgment on this claim for LVMPD and Lombardo.

**B. State Law Claims**

    1. Assault and Battery

The plaintiffs assert state law claims for assault and battery against Gowens, Swartz, Squeo, and Lindberg. They contend that these defendants used more force than was reasonably necessary and should be liable for battery to that extent. Because no genuine dispute remains that the officers' conduct was reasonable under the Fourth Amendment, the defendants are entitled to summary judgment on the plaintiffs' assault and battery claims. *See Gordon v. Las Vegas Metro. Police Dep't*, 2:13-CV-01095-GMN, 2015 WL 5344549, at *11 (D. Nev. Sept. 14, 2015) ("The standard for battery by a police officer under Nevada law is the same as under a § 1983 claim."); *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996) (same). Accordingly, I grant summary judgment for defendants Gowens, Squeo, Swartz, and Lindberg on these claims.

    2. Negligence, Negligent Infliction of Emotional Distress, and Wrongful Death

The plaintiffs assert state law claims for negligence, negligent infliction of emotional distress, and wrongful death against all defendants. The defendants argue that the negligence claims fail because they did not breach a duty by shooting and killing Wilson, the plaintiffs have not presented expert testimony to establish the standard of care for police practices leading up to the shooting, and their decisions regarding use of force are entitled to discretionary immunity. The plaintiffs respond that discretionary immunity does not apply, the reasonableness standard under negligence is distinct from the Fourth Amendment analysis, and the officers can testify as to the standard of care which, along with LVMPD's written policies, is sufficient to establish the

standard of care and breach of that standard without an expert. In reply, the defendants argue the plaintiffs have no evidence that the "ram" caused Wilson any injuries.

For a negligence claim to succeed, a plaintiff must show: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages. *Scialabba v. Brandise Constr. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996). "Whether a defendant owes a plaintiff a duty of care is a question of law." *Id.* Whether the defendant breached a duty and whether any breach caused the plaintiff's damages generally are questions of fact for the jury. *Frances v. Plaza Pac. Equities*, 847 P.2d 722, 724 (Nev. 1993).

### *a. The Shooting*

The plaintiffs have failed to present evidence that the defendants breached a duty by shooting Wilson. As discussed above, the officers used reasonable force under the circumstances in shooting Wilson. Consequently, the defendants' actions in shooting Wilson were not wrongful and did not breach a duty owed to Wilson. *See Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1192-93 (D. Nev. 2008), *aff'd*, 371 Fed. App'x 752 (9th Cir. 2010). I therefore grant summary judgment in favor of all defendants on the negligence claims based on the shooting. Because the shooting is what caused Wilson's death, the wrongful death claim fails as a matter of law. *See* NRS § 41.085(2) (providing a cause of action "[w]hen the death of any person . . . is caused by the wrongful act or neglect of another"); ECF No. 27-3 at 5 (autopsy report concluding Wilson "died of multiple gunshot wounds").

/ / / /

/ / / /

/ / / /

*b. The "Ramming"*

The plaintiffs argue in their response that the negligent act was Squeo "ramming" Wilson. Because the plaintiffs identify only Squeo as having engaged in this act, I grant summary judgment in favor of the other defendants on this claim.

Squeo's decision to "ram" Wilson is not entitled to discretionary immunity. Nevada has generally waived its sovereign immunity under Nevada Revised Statutes (NRS) § 41.031. One exception to that waiver is discretionary function immunity. *See* NRS § 41.032(2). Nevada's discretionary function immunity statute provides that "no action may be brought" against a public officer "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." NRS § 41.032(2). The Supreme Court of Nevada has "adopted the *Berkovitz-Gaubert* test enunciated by the United States Supreme Court for determining whether acts fall within the scope of discretionary-act immunity." *Paulos v. FCH1, LLC*, 456 P.3d 589, 595 (Nev. 2020) (en banc) (citing *Martinez v. Maruszczak*, 168 P.3d 720 (Nev. 2007) (en banc)). To give rise to discretionary act immunity, the conduct at issue "must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Id.* (quotation omitted).

The Supreme Court of Nevada recently held that an officer's "on-the-spot decision to use lethal force" is not "susceptible to policy analysis for purposes" of the second prong. *Estate of Brenes v. Las Vegas Metro. Police Dep't*, No. 78272, 468 P.3d 368, 2020 WL 4284335, at *1 (Nev. July 24, 2020) (internal quotation marks omitted). Consequently, the officer's decision to use deadly force in that case was "not shielded by discretionary-function immunity." *Id.*

17

Likewise, Squeo's on-the-spot decision to make contact with Wilson's car was not based on considerations of social, economic, or political policy. He therefore is not entitled to discretionary function immunity for that action. *See Cepero v. Gillespie*, No. 2:11-cv-01421-JAD-NJK, 2020 WL 6173503, at *11 (D. Nev. Oct. 21, 2020) (holding that officers' "in-the-moment" decisions regarding the "appropriate level of force to use" were not shielded by discretionary immunity); *Plank v. Las Vegas Metro. Police Dep't*, No. 2:12-cv-02205-JCM-PAL, 2016 WL 1048892, at *8 (D. Nev. Mar. 14, 2016) ("Since *Martinez*, federal courts applying Nevada law have been reluctant to grant discretionary immunity to police officers accused of using excessive force.").

The parties next dispute whether the plaintiffs must present expert testimony on the relevant standard of care. "Generally, where an alleged harm involves conduct that is not within the common knowledge of laypersons, the applicable standard of care must be determined by expert testimony." *Boesiger v. Desert Appraisals, LLC*, 444 P.3d 436, 439 (Nev. 2019) (quotation omitted). Although driving is generally within the common knowledge of laypersons, police techniques and tactics during a high-speed car chase are not. Topics such as how to conduct a police pursuit, when and how to use a PIT maneuver or other contacts with vehicles, and under what circumstances contact is appropriate in the context of a police pursuit of a fleeing felon are decisions that involve professional judgment under uncertain and evolving circumstances. *See Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.*, 642 P.2d 1086, 1087 (Nev. 1982) (stating that expert testimony is not required where the conduct in question does not involve "esoteric knowledge or uncertainty that calls for the professional's judgment"); *Bao Xuyen Le v. Reverend Dr. Martin Luther King, Jr. Cnty.*, No. C18-55 TSZ, 2019 WL 2289681, at *1 (W.D. Wash. May 29, 2019) (allowing experts to testify about "law enforcement

practices, tactics, techniques, and training, which are subjects beyond the common knowledge of the average juror"). Consequently, expert testimony is required to establish the standard of care.

The plaintiffs contend that they may rely on LVMPD's policies and the officers' testimony to establish the standard of care and Squeo's breach of that standard. The parties have not adequately addressed this issue for me to determine whether the officers' testimony and LVMPD's policy suffice. Additionally, the defendants raised causation for the first time in their reply brief. The plaintiffs thus have not had a fair opportunity to respond to that argument. I therefore deny the defendants' summary judgment motion on the plaintiffs' negligence and negligent infliction of emotional distress claims against Squeo. But because these claims might be decided as a matter of law without the need for a trial, I will extend the dispositive motion deadline for the parties to file new motions for summary judgment on these claims only.

### 3. Negligent Supervision and Training

The plaintiffs assert a claim for negligent hiring, supervision, and training against LVMPD and Lombardo. The defendants argue that they are entitled to discretionary function immunity. The plaintiffs do not respond.

Decisions about whether to hire and how to properly train and supervise an officer involve individual judgment on the part of the policymakers or supervisors and are based on considerations of social, economic, or political policy. *Paulos*, 456 P.3d at 596 (holding that LVMPD's hiring and training decisions are subject to discretionary act immunity). Accordingly, LVMPD and Lombardo are entitled to discretionary function immunity. I therefore grant the defendants summary judgment on the plaintiffs' negligent supervision and training claim.

/ / / /

/ / / /

## III. CONCLUSION

I THEREFORE ORDER that the defendants' motion for summary judgment (**ECF No. 22**) **is GRANTED in part**. The motion is granted as to all defendants on all claims except the plaintiffs' claims of negligence and negligent infliction of emotional distress against defendant John Squeo.

I FURTHER ORDER that the dispositive motion deadline is extended to December 14, 2020 for the remaining claims against defendant John Squeo only.

DATED this 24th day of November, 2020.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE